The CITY OF LITTLETON, Colorado, a Colorado Municipal Corporation, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY, Colorado; The Honorable Joseph R. Quinn, Chief Justice of the Colorado Supreme Court; James D. Thomas, State Court Administrator; James Stroup, State Controller; Gail Schoettler, State Treasurer; The Honorable Robert F. Kelley, John P. Gately, Joyce S. Steinhardt, Kenneth K. Stuart, George B. Lee, Jr., and Thomas Levi, District Court Judges within the Eighteenth Judicial District regularly assigned to Arapahoe County, Colorado; and Jane K. Klimke, County Court Clerk of Arapahoe County, Colorado; all in their official capacities only, Defendants–Appellees.

No. 89SA46.

Supreme Court of Colorado, En Banc.

Feb. 20, 1990.

---

Berkowitz, Berkowitz & Brady, Larry W. Berkowitz, William J. Brady and Richard J. Gleason, Denver, for plaintiff-appellant.

Downey, Stuart & Knickrehm, P.C., James E. Heiser, Englewood, for defendant-appellee Bd. of County Com'rs of Arapahoe County.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Neil L. Tillquist, Asst. Atty. Gen., Denver, for all other defendants-appellees.

Justice LOHR delivered the Opinion of the Court.

This case arises out of the 1987 relocation of the Arapahoe County district courts to the "Judicial Complex" in unincorporated Arapahoe County. The City of Littleton (Littleton) filed an action in Denver District Court seeking declaratory and injunctive

relief to prevent the relocation. After a hearing on Littleton's motion for a preliminary injunction, the trial court denied relief and dismissed the case, concluding that section 13–5–119(2), 6A C.R.S. (1987), authorized the relocation. We affirm the trial court's judgment.[1]

## I.

The eighteenth judicial district consists of the counties of Arapahoe, Douglas, Elbert and Lincoln. Prior to 1987, two of the district court judges for the eighteenth judicial district assigned to Arapahoe County sat in the City of Aurora (Aurora) and the others sat in Littleton. In May 1985, construction began on the Judicial Complex near Centennial Airport in unincorporated Arapahoe County. On June 24, 1985, the Board of County Commissioners adopted a plan to locate six of the district judges assigned to Arapahoe County at the Judicial Complex and two in Littleton. In September 1985, Chief Justice Joseph R. Quinn wrote a letter to the county commissioners, disapproving this plan because the statutes required district courts to sit in Littleton and Aurora and because consolidating all the county and district courts in one location, or at most two, would be more efficient and cost effective. As a result of this letter, the commissioners halted construction of the Judicial Complex. In October 1985, the Board of County Commissioners submitted a new proposal to Chief Justice Quinn calling for the relocation of all the district courts to the Judicial Complex.[2] Chief Justice Quinn approved this plan, contingent on the necessary statutory changes. Construction was resumed in 1986 after the passage of Senate Bill 32,

Ch. 105, sec. 1, § 13–5–119, 1986 Colo.Sess. Laws 674, modifying section 13–5–119, 6A C.R.S. (1987).

Littleton filed an action in Denver District Court seeking declaratory and injunctive relief to prevent the relocation of the district courts to the Judicial Complex. On October 30, 1987, the trial court issued a written order denying Littleton's motion for a preliminary injunction and dismissing the case.[3] In November 1987, the district courts for Arapahoe County were relocated to the Judicial Complex, and the courts have been operating there since that time.

On appeal, Littleton argues that sections 13–1–116, 13–5–119(2) and 13–5–101, 6A C.R.S. (1987), require the Arapahoe County district courts to be located in Littleton, the county seat, and that a contrary interpretation of the statutes would violate the state constitution's prohibitions against special legislation and delegation of legislative authority. We take up these challenges in turn in parts II, III and IV of this opinion.

## II.

### A.

■ Section 13–1–116, 6A C.R.S. (1987), states:

> Every court of record shall sit at the county seat of the county in which it is held, except as may be otherwise provided by law.

Section 13–5–119(2), 6A C.R.S. (1987), states:

> The number of judges for the eighteenth judicial district shall be ten. The district judges regularly assigned to Arapahoe county shall maintain their of-

---

1. Because the constitutionality of a statute is at issue, initial appellate jurisdiction lies in this court. *See* § 13–4–102(1)(b), 6A C.R.S. (1987); *Kane v. Town of Estes Park*, 786 P.2d 412, 414 n. 2 (Colo.1990).

2. Three county courts were to remain for a time in Littleton and three in Aurora under other provisions of the plan.

3. On October 9, 1987, at the close of a hearing on Littleton's motion seeking a preliminary injunction, the trial court ruled from the bench, denying the motion, but also granting "the de-

fendants' motion to dismiss and for a directed verdict." In fact, no such motion had been filed. On October 30, 1987, the trial court issued a written order *nunc pro tunc* October 9, 1987, confirming the denial of injunctive relief and the granting of the motion to dismiss and for a directed verdict. The trial court subsequently denied a motion by the defendants to amend the written order to delete the reference to a motion to dismiss. We, therefore, construe the court's action as a final judgment of dismissal.

fices in one location within Arapahoe county.

When read together, these sections are subject to two possible interpretations. The first is that the requirement of section 13–5–119(2) that district judges assigned to Arapahoe County maintain their offices in one location within Arapahoe County is an exception to the general requirement of section 13–1–116 that courts sit at the county seat. Under this interpretation, the exception is authorized by the language of section 13–1–116 qualifying its mandate that every court of record sit at the county seat by the phrase "except as may be otherwise provided by law." The second possible interpretation is that section 13–5–119(2) simply requires all district judges assigned to Arapahoe County to sit at one location and section 13–1–116 further requires that location to be at the county seat. Littleton advocates the second interpretation. We find the first to be more consistent with the statutory language and the legislature's intent.

In interpreting statutes, the legislature's intent is our primary consideration. *Kane v. Town of Estes Park*, 786 P.2d 412, 415 (Colo.1990); *Schubert v. People*, 698 P.2d 788, 793 (Colo.1985). To determine the legislature's intent we first look to the language of the statute. *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo.1987). Section 13–5–119(2) permits the district judges regularly assigned to Arapahoe County to sit at a single location in Arapahoe County. If this were not meant to be an exception to the requirement of section 13–1–116 that every court of record sit at the county seat, the phrase "within Arapahoe county" in section 13–5–119(2) would be superfluous.[4] Because statutes should be interpreted to avoid making phrases superfluous or insignificant, *Colorado General Assembly v. Lamm*, 700 P.2d 508, 517 (Colo.1985); *Johnston v. City Council of City of Greenwood Village*, 177 Colo. 223, 228, 493 P.2d 651, 654 (1972), we conclude that section 13–5–119(2) was intended to establish

an exception to the county seat requirement of section 13–1–116.

To the extent that this statutory language remains ambiguous, we must look to the legislature's intent and purpose. *Engelbrecht v. Hartford Accident and Indemnity Co.*, 680 P.2d 231, 233 (Colo.1984). When possible, a statute should be construed to accomplish the purposes for which it was enacted. *B.B. v. People*, 785 P.2d 132, 137–38 (Colo.1990). A review of the legislative history of section 13–5–119(2) convincingly demonstrates that the section was amended to authorize the relocation of the Arapahoe County district courts to the new Judicial Complex in unincorporated Arapahoe County.

Prior to 1986, section 13–5–119(2) provided in pertinent part:

> The number of judges for the eighteenth judicial district shall be ten, two of whom shall maintain their offices and courtrooms in the Arapahoe County portion of the City of Aurora.

Ch. 123, sec. 1, § 13–5–119(2), 1985 Colo. Sess.Laws 569, 569. In 1986, Senate Bill 32 was proposed to authorize the relocation of the district courts to the Judicial Complex pursuant to the Arapahoe County Board of Commissioners' relocation proposal. *See* Representative Chris Paulson, Remarks before the House Education Committee (Feb. 6, 1986), an exhibit in this case. The preamble to Senate Bill 32 describes the bill as "[c]oncerning the authority of district judges for the eighteenth judicial district assigned to Arapahoe county to maintain their offices anywhere within such county." Ch. 105, sec. 1, § 13–5–119, 1986 Colo.Sess.Laws 674; *see City of Ouray v. Olin*, 761 P.2d 784, 789 (Colo.1988) (title of legislation may be considered as an aid in determining legislative intent); *Martinez v. Continental Enterprises*, 730 P.2d 308, 313 (Colo.1986) (same).

We conclude, therefore, that section 13–5–119(2) authorizes district court judges regularly assigned to Arapahoe County to

---

4. Indeed, even without the quoted phrase, the only possible purpose for the second sentence of § 13–5–119(2) under Littleton's proposed interpretation would be to limit the location of courts of record to a single location within the county seat.

sit at a single location anywhere in Arapahoe County.

### B.

Littleton argues, however, that at most section 13–5–119(2) authorizes judicial *offices* to be maintained at the new Judicial Complex, but does not authorize courtrooms outside the county seat. In support of that argument, Littleton points out that prior to Senate Bill 32, section 13–5–119(2) specified that two district judges would maintain their "offices and courtrooms" in Aurora and that the original version of section 13–5–119(2) in Senate Bill 32 also referred to "offices and courtrooms." Littleton then points out that in its present form that section speaks only of maintaining judges' "offices" in one location in Arapahoe County. Littleton presents no explanation for the change, and it may have resulted from nothing more than an effort to eliminate unnecessary language. We conclude that "offices" must be read broadly to mean "a place where a particular kind of business is transacted," *Webster's New Collegiate Dictionary* 820 (9th ed.1989), and therefore to include the courtrooms, chambers and clerks' offices of the district courts. We decline to adopt a restrictive interpretation that could lead to the judges' chambers being in one location and their courtrooms in another. In so construing the statute we give effect to the presumption that the legislature intended a just and reasonable result, § 2–4–201(1)(c), 1B C.R.S. (1980), one consistent with the object sought to be attained and the circumstances under which the statute was enacted, *see* § 2–4–203(1)(a), (b), 1B C.R.S. (1980). Nothing in the evidence of the negotiations leading up to the introduction of Senate Bill 32 or in the legislative history preceding its adoption suggests that the anomalous consequence of locating judges' offices in one place and their courtrooms in another was contemplated by anyone.

**5.** This does not mean that all judicial proceedings are rigidly confined to the Judicial Complex so that adjustments cannot be made to accommodate particular exigencies. *See People v. Higa,* 735 P.2d 203 (Colo.App.1987) (trial proceedings moved to hospital to permit participation by juror who was taken ill after evidence had been presented but before closing arguments).

### C.

Littleton also contends that relocation of the Arapahoe County district courts to the Judicial Complex is inconsistent with the requirements of section 13–5–101, 6A C.R.S. (1987). That section states in part:

Terms of court shall be fixed by rules adopted by the district court in each district; except that at least one term of court shall be held each calendar year in each county within the district, at the county seat of such county.

The clear intent of section 13–5–119(2) is that the district judges assigned to Arapahoe County shall perform their judicial functions with respect to Arapahoe County district court matters at a single location in Arapahoe County, and that the location need not be at the county seat.[5] This is contrary to the requirement of section 13–5–101 that at least one term of court shall be held each calendar year at the county seat. To the extent that section 13–5–119(2) is irreconcilable with section 13–5–101, the principle for resolving the conflict is established by section 2–4–206, 1B C.R.S. (1980). That statute provides in pertinent part that "[i]f statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date." *Accord City of Colorado Springs v. State,* 626 P.2d 1122, 1126 (Colo.1981); *L.O.W. v. District Court,* 623 P.2d 1253, 1260–61 (Colo.1981). Section 13–5–119(2) has the latest effective date. Section 13–5–101, therefore, does not impose an impediment to the relocation of the Arapahoe County district courts.

### III.

Littleton argues that if section 13–5–119(2) is interpreted to permit district judges assigned to Arapahoe County to sit outside the county seat, it is unconstitutional special legislation. We disagree.

A statute is presumed to be constitutional and a party challenging it must establish its unconstitutionality beyond a reasonable doubt. *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 935 (Colo.), *appeal dismissed,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 214 (1985); *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 214 (Colo.1984).

■ Article V, section 25, of the Colorado Constitution prohibits the general assembly from passing local or special laws for enumerated purposes [6] and "[i]n all other cases where a general law can be made applicable." Although general laws are preferable, specific legislation is permissible when it is necessary to address specific circumstances. *Morgan County Jr. College Dist. v. Jolly,* 168 Colo. 466, 471, 452 P.2d 34, 36–37, *appeal dismissed,* 396 U.S. 24, 90 S.Ct. 198, 24 L.Ed.2d 145 (1969); *see also Water Dist. No. 1 of Johnson County v. Robb,* 182 Kan. 2, 318 P.2d 387, 396 (1957). We have held that the determination whether a general law can be made applicable to a situation is "a discretionary determination to be made by the legislature, which is not reviewable by the court unless a palpable abuse of discretion is shown." *Morgan County,* 168 Colo. at 470, 452 P.2d at 36.

The record demonstrates that the site of the new Judicial Complex in unincorporated Arapahoe County was chosen because of projections of population growth and increased business activity. Arapahoe County is different from most counties in Colorado because its county seat is not projected to remain the center of its population. The legislature had the discretion, therefore, to determine that the general law, with its assumption that the county seat is the best location for the district courts, could not appropriately be made applicable to the conditions prevailing in Arapahoe County. *See Water Dist. No. 1,* 318 P.2d at 396–97 (highly populated area encompassing multiple governmental entities, with at-

tendant need for cooperative effort to create water supply and distribution system, presented a situation unique in Kansas and justified special legislation to create special water district suitable to meet needs).

In support of their argument that section 13–5–119(2) is unconstitutional special legislation, Littleton relies on *Coulter v. Board of County Comm'rs of Routt County,* 9 Colo. 258, 11 P. 199 (1886). In *Coulter,* we held that the statute requiring that every year a term of the Routt County District Court be held in Yampa, a town that was not the county seat, was a special law in violation of Article V, section 25. In that case we explained that "[o]ne of the most important constitutional guaranties secured to each and all counties of the state is freedom from the evils of special legislation, whereby county affairs and county government are likely to be continually disturbed by useless and unwholesome enactments." *Id.* at 264, 11 P. at 202.

This case is distinguishable from *Coulter.* The statute in *Coulter* represented a legislative intrusion on the conduct of local affairs. In contrast, the amendments to section 13–5–119(2) were designed to enable the Arapahoe County Board of Commissioners to proceed with their plan to relocate the district courts. Furthermore, unlike the present case, in which unusual circumstances provided adequate reasons to support the legislation concerning the Arapahoe County district courts, the opinion in *Coulter* makes no mention of any special circumstances that might have justified the specific legislation directed at Routt County.

■ Littleton also argues that an interpretation of section 13–5–119(2) permitting Arapahoe County district courts to be located outside the county seat would violate Article VI, section 19, of the Colorado Constitution, which requires laws relating to state courts to be uniform.[7] We have nev-

---

6. Littleton does not argue that the legislation at issue relates to one of the enumerated purposes in Article II, § 25, of the Colorado Constitution.

7. Article VI, § 19, of the Colorado Constitution states:

All laws relating to state courts shall be general and of uniform operation throughout the state, and except as hereafter in this section specified the organization, jurisdiction, powers, proceedings, and practice of all courts of

er held that this section prohibits specific laws governing court location. Rather, Article VI, section 19, is designed to require uniform laws with regard to court organization, jurisdiction, powers and procedure. *See Rogers v. People*, 9 Colo. 450, 455–57, 12 P. 843, 846 (1886) (construing the predecessor to Article VI, § 19, which contained substantially the same provisions).

### IV.

 Littleton also contends that our interpretation of section 13–5–119(2) results in an unlawful delegation of legislative authority in violation of Article III of the Colorado Constitution.[8] Littleton argues that section 13–5–119(2) does not specify the precise location of the courts, and thereby unlawfully gives the county commissioners discretion to choose the location. Littleton cites no authority for the contention that such a delegation is unlawful. In fact, section 13–5–119(2) is no more an unlawful delegation than is section 13–1–116, which implicitly gives county commissioners discretion to choose the location of courts within the county seat. Moreover, the record demonstrates that in enacting section 13–5–119(2) the legislature was endorsing Arapahoe County's previously adopted plan to move the courts to the Judicial Complex.

### V.

In summary, we hold that section 13–5–119(2) authorizes the relocation of the Arapahoe County district courts to the Judicial Complex in unincorporated Arapahoe County. We further hold that section 13–

the same class, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform. County courts may be classified or graded as may be provided by law, and the organization, jurisdiction, powers, proceedings, and practice of county courts within the same class or grade, and the force and effect of the proceedings, judgments and decrees of county courts in the same class or grade shall be uniform; provided, however, that the organization and administration of the county court of the city and county of Denver shall be as provided in the charter and ordinances of the city and county of Denver.

5–119(2) is neither an unconstitutional special law, an unconstitutional non-uniform law relating to the state courts nor an unlawful delegation of legislative authority. Accordingly, we affirm the trial court's judgment.

QUINN, C.J., does not participate.

**8.** Article III of the Colorado Constitution provides:

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.