Charles NORSBY, Plaintiff–Appellant,

v.

William JENSEN, individually; The Department of Corrections of the State of Colorado; The State of Colorado; Warren Diesslin, in his official capacity as Warden of the Buena Vista Correctional Facility; Michael Perry, in his official capacity as Director or Head of the

Regimented Inmate Discipline and Treatment Program at the Buena Vista Correctional Facility; and Aristedes W. Zavaras, in his official capacity as the Director of the Colorado Department of Corrections, Defendants–Appellees.

No. 93CA2158.

Colorado Court of Appeals, Div. IV.

July 13, 1995.

Rehearing Denied Aug. 17, 1995.

Certiorari Denied April 22, 1996.

Law Offices of John R. Holland, P.C., John R. Holland, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry D. Tannenbaum, Sr. Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge KAPELKE.

In this negligence action to recover damages for personal injuries, plaintiff, Charles Norsby, appeals from the judgment of dismissal entered on the basis of sovereign immunity in favor of defendants, the Department of Corrections (DOC), the State of Colorado (State), and William Jensen, Warren Diesslin, Michael Perry, and Aristedes W. Zavaras (the individual defendants). We affirm.

In his complaint, plaintiff alleged that he was injured in 1992 while he was incarcerated in the Buena Vista Correctional Facility. At the time of his injury, plaintiff was a participant in the Regimented Inmate Discipline and Treatment Program (the Program), which is governed by § 17–27.7–101, et seq., C.R.S. (1994 Cum.Supp.) (the Act).

Plaintiff asserted negligence claims against all defendants and a claim under 42 U.S.C. § 1983 (1988) against defendant Jensen for alleged violations of his constitutional rights. In addition, plaintiff asserted a claim for declaratory relief requesting that the court hold unconstitutional § 17–27.7–103(1), C.R.S. (1994 Cum.Supp.), which provides that "the department is absolved of liability for

participation in the program." Pursuant to C.R.C.P. 12(b)(5), defendants moved to dismiss plaintiff's claim for declaratory relief. The trial court granted the motion and, on defendants' motion for clarification, also dismissed plaintiff's negligence claims against all defendants. The trial court certified its order as final pursuant to C.R.C.P. 54(b). Defendant Jensen did not move for dismissal of the § 1983 claim against him, and the trial court did not dismiss that claim.

### I.

We agree with defendants' contention that the trial court should have treated the motion as one to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), but conclude that remand is unnecessary.

■ Our supreme court has declared that the issue of sovereign immunity is one of subject matter jurisdiction and that motions to dismiss on the basis of sovereign immunity are to be determined in accordance with C.R.C.P. 12(b)(1), not under C.R.C.P. 12(b)(5), which applies to motions to dismiss for failure to state a claim. *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993); *see also Kittinger v. City of Colorado Springs*, 872 P.2d 1265 (Colo. App.1993). Thus, the trial court should have treated this matter as a motion to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1).

■ However, if a reviewing court is satisfied that all relevant evidence has been presented to the trial court, it may apply C.R.C.P. 12(b)(1) to the record without a remand. *See Capra v. Tucker*, 857 P.2d 1346 (Colo.App.1993). Such is the case here.

■ We review the trial court's determination of this threshold jurisdictional issue under the highly deferential, clearly erroneous standard. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra; Cline v. Rabson,* 862 P.2d 1035 (Colo.App. 1993).

### II.

Plaintiff first contends that the trial court erred in determining that, under § 17–27.7–103(1), defendants are immune from liability for damages plaintiff suffered while participating in the Program. We perceive no error.

■ Our goal in interpreting any statute is to determine and give effect to the intent of the General Assembly. *United Blood Services v. Quintana,* 827 P.2d 509 (Colo.1992); *First Bank v. State,* 852 P.2d 1345 (Colo.App. 1993). In doing so, we look first to the language of the statute itself. *People v. Wiedemer,* 852 P.2d 424 (Colo.1993).

■ A statute should be "construed as a whole so as to give consistent, harmonious, and sensible effect to all of its parts." *Massey v. District Court,* 180 Colo. 359, 364, 506 P.2d 128, 130 (1973); *see also Martinez v. Badis,* 842 P.2d 245 (Colo.1992). Thus, the meaning of any one section of a statute must be gleaned from a consideration of the overall legislative purpose. *People v. Alpert,* 660 P.2d 1295 (Colo.App.1982).

■ When interpreting two statutory sections, we must attempt to harmonize them in order to give effect to their purposes. *See Ragsdale Bros. Roofing, Inc. v. United Bank,* 744 P.2d 750 (Colo.App.1987); *Ortega v. Industrial Commission,* 682 P.2d 511 (Colo.App.1984). If possible, the provisions should be reconciled to uphold the validity of both. *Cooley v. Big Horn Harvestore Systems,* 813 P.2d 736 (Colo.1991).

■ To the extent that a conflict between the statutes is irreconcilable, however, the later enactment will prevail over the earlier. *People v. Wiedemer, supra.* In addition, absent clear legislative intent to the contrary, the more specific of two conflicting provisions shall prevail. *In re M.S. v. People,* 812 P.2d 632 (Colo.1991); *People in Interest of E.Z.L.,* 815 P.2d 987 (Colo.App. 1991).

We analyze § 17–27.7–103(1) with these principles of statutory construction in mind.

### A.

#### *Liability of the DOC*

■ Plaintiff initially contends that the trial court erred in concluding that under

§ 17–27.7–103(1) the DOC is immune from liability for damages sustained by participants in the Program. We disagree.

The General Assembly's intent in providing for the Program was to:

> benefit the state by reducing prison overcrowding and [to] benefit persons who have been convicted of offenses and placed in the custody of the department by promoting such person's [sic] personal development and self-discipline.

Section 17–27.7–101, C.R.S. (1994 Cum. Supp.). The Program, commonly referred to as the "boot camp program," is described in the Act as a rigorous 90–day "military styled intensive physical training and discipline program." Section 17–27.7–102(1)(a), C.R.S. (1994 Cum.Supp.). An integral part of the Program is a drug and alcohol education and treatment program. Section 17–27.7–102(1)(d), C.R.S. (1994 Cum.Supp.).

Participation in the Program is voluntary and is limited to nonviolent offenders thirty years of age or under who are free of any physical or mental defect that could jeopardize their ability to complete the Program. Section 17–27.7–103(1); *see also People v. Young,* 894 P.2d 19 (Colo.App.1994).

These provisions indicate that the General Assembly recognized that the participants in the Program would experience physical exertion and mental stress beyond that experienced by inmates in more traditional correctional facilities and that Program participants would therefore be subject to an increased risk of injury.

Immediately following the description of the criteria for participation in the Program, the Act provides that "the department is absolved of liability for participation in the program." Section 17–27.7–103(1). In our view, this provision evinces a clear legislative intent to immunize the DOC from liability for damages suffered by participants in the Program, including damages resulting from physical injuries.

We reject plaintiff's contention that, because § 24–10–106(1)(b), C.R.S. (1988 Repl. Vol. 10A) of the Governmental Immunity Act (GIA) provides that sovereign immunity is waived by a public entity in any action for injuries resulting from the operation of a correctional facility or jail, the trial court erred in interpreting § 17–27.7–103(1) as immunizing the DOC from liability for the operation of the Program.

Enacted in 1971, the GIA bars any claim against a public entity for injuries that lie in tort or could lie in tort. Section 24–10–108, C.R.S. (1988 Repl.Vol. 10A); *see also Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994). This immunity is extended to public employees acting within the scope of their employment, provided their actions are not willful or wanton. Section 24–10–118(2), C.R.S. (1988 Repl.Vol. 10A).

However, the General Assembly has deemed it appropriate to waive the defense of sovereign immunity in a limited number of situations. Section 24–10–106(1)(b), C.R.S. (1988 Repl.Vol. 10A), which provides for a waiver of governmental immunity for the operation of correctional facilities or jails, creates one such exception to governmental immunity.

Thus, with respect to governmental immunity for liability for damages arising out of participation in the Program, the waiver contained in § 24–10–106(1)(b) of the GIA conflicts with the immunity provision in § 17–27.7–103(1) of the Act. However, because the Act was enacted subsequent to the adoption of the GIA, and because § 17–27.7–103(1) is more specific than § 24–10–106(1)(b), we conclude that § 17–27.7–103(1) prevails. *See In re M.S. v. People, supra; People v. Wiedemer, supra; People in Interest of E.Z.L., supra.* In our view, this construction of the statutes best effectuates the purposes of the legislative scheme. *See In re M.S. v. People, supra.*

Accordingly, we conclude that the trial court correctly determined that the DOC is immune from liability for damages plaintiff suffered while a participant in the Program.

We note that the General Assembly amended the GIA in 1994 to provide that the waiver of sovereign immunity relative to the operation of correctional facilities:

> does not apply to claimants who have been convicted of a crime and incarcerated in a

correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section.

Section 24–10–106(1.5)(a), C.R.S. (1994 Cum. Supp.). Because plaintiff's injuries occurred in 1992 and he filed his claim in 1993, however, this amendment does not apply here.

### B.

#### Liability of the State and the Individual Defendants

■ Plaintiff next contends that the trial court erred in concluding that § 17–27.7–103(1) also immunizes the State and the DOC employees from liability for damages suffered by participants in the Program. We disagree.

■ Governmental immunity is in derogation of the common law and therefore must be strictly construed. Waivers of governmental immunity, however, are not to be so construed. *Bertrand v. Board of County Commissioners, supra.* Thus, while we must construe the immunity provision contained in § 17–27.7–103(1) strictly, we are not to interpret the waiver of immunity in § 24–10–106(1)(b) in a similarly strict manner.

■ We presume, however, that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not select a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985); § 2–4–201(1)(c), C.R.S. (1986 Repl.Vol. 1B).

Section § 24–10–106(1)(b) unambiguously waives governmental immunity for liability for injuries resulting from the operation of a correctional facility. This waiver is applicable to the State as well as to employees of any public entity engaged in the operation of such a facility.

The language of § 17–27.7–103(1) is similarly clear. It provides that the DOC may not be held liable for injuries suffered by participants in the Program. Although the specific language of the Act does not reveal whether the General Assembly intended to extend this immunity provision to the State or to DOC employees, the legislative rationale for immunizing the DOC from liability supports an interpretation that would also encompass the State and DOC employees within such immunity.

The function of the DOC and its employees is to "manage, supervise, and control each correctional facility supported by the state." Section 17–1–104, C.R.S. (1986 Repl.Vol. 8A); *see also* § 17–1–103(1)(a), C.R.S. (1994 Cum. Supp.). The DOC is funded by the State, and any judgment entered against the DOC would ultimately be paid with funds provided by the State. Similarly, subject to certain exceptions, the DOC (and ultimately the State) would be responsible for defending and paying any judgment or settlement of claims against a DOC employee arising "out of injuries sustained from an act or omission of such employee occurring during the performance of his [or her] duties and within the scope of his [or her] employment, except where such act or omission is willful and wanton." Section 24–10–110, C.R.S. (1988 Repl.Vol. 10A).

Thus, if we were to interpret the statute as conferring immunity only upon the DOC itself, and not upon the State and the DOC employees, the immunity would have virtually no practical significance. *See State v. Mason,* 724 P.2d 1289 (Colo.1986). Such a result appears unreasonable. If we were to adopt such an interpretation, we would, in effect, be ascribing to the General Assembly an intent to enact an essentially meaningless provision because public funds would remain exposed to claims against the State and the public employees.

Our conclusion that the General Assembly intended to grant immunity to the State and DOC employees, as well as to the DOC, is bolstered by the declaration of purpose contained in the GIA:

> The general assembly also recognizes that the state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions. The general assembly further recognizes that the taxpayers would ultimately bear the fiscal burdens of unlimited

liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens. It is also recognized that public employees, whether elected or appointed, should be provided with protection from unlimited liability so that such public employees are not discouraged from providing the services or functions required by the citizens or from exercising the powers authorized or required by law. . . .

Section 24–10–102, C.R.S. (1988 Repl.Vol. 10A); *see also* § 24–10–118(2), C.R.S. (1988 Repl.Vol. 10A).

While we recognize that the immunity provision in § 17–27.7–103(1) of the Act is not part of the GIA, we can conceive of no reason why the General Assembly's intent to grant governmental immunity to the State, public entities, and public employees for purposes of the GIA would not also apply to the immunity provision contained in the Act.

Thus, we conclude that the trial court correctly construed § 17–27.7–103(1) as applying to the State and the individual defendants and properly dismissed plaintiff's claims against them.

### III.

Plaintiff next challenges § 17–27.7–103(1) on various constitutional grounds. We perceive no constitutional infirmity.

■ At the outset, we note that statutes are presumed to be constitutional, and the burden is on the party attacking a statute to establish its unconstitutionality beyond a reasonable doubt. *People v. Wiedemer, supra.*

### A.

■ Plaintiff first contends that the immunity provision of the Act violates his right to equal protection of the laws under the Colorado and United States Constitutions. More specifically, plaintiff claims that § 17–27.7–103(1) is unconstitutional because, unlike the participants in the Program, individuals serving sentences in other DOC correctional institutions were permitted, prior to the 1994 amendments, to sue the State, the

DOC, and DOC employees for injuries suffered during their incarceration. We reject plaintiff's contention.

■ The equal protection guarantee of the United States and Colorado Constitutions requires like treatment of persons who are similarly situated. *Bath v. Department of Revenue,* 758 P.2d 1381 (Colo.1988). That guarantee does not, however, prevent the General Assembly from placing limitations on governmental liability for damages in tort, even if such limitations "work favorably for some but not others." *State v. DeFoor,* 824 P.2d 783, 786 (Colo.1992).

■ As long as no fundamental right is at stake and the legislative scheme is not based either on a suspect classification or on a classification requiring intermediate scrutiny, the test for determining whether there is an equal protection violation is whether the classification is reasonable and bears a rational relationship to legitimate governmental objectives. *People v. Wiedemer, supra.* Thus, a statutory distinction between different classes of people will be upheld provided it is neither arbitrary nor unreasonable. *People v. Garcia,* 698 P.2d 801 (Colo.1985).

Here, since no fundamental right or suspect class is involved, we need only determine whether the statutory classification is reasonably related to a legitimate state objective. Applying the rational basis test here, we conclude that the Act does not violate plaintiff's right to equal protection.

One of the General Assembly's purposes in passing the Act was to provide a fiscal benefit to the State by reducing prison overcrowding. Section 17–27.7–101.

Our supreme court has consistently held that classifications restricting recovery by various tort victims bear a rational relationship to the legitimate state interest of fiscal certainty. *See State v. DeFoor, supra* (limitations on damages for the state's liability are rationally related to the legitimate state interests of fiscal solvency and providing essential services while minimizing taxpayer burdens); *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986) (recovery limitations in the Governmental Immunity Act are reasonably related to the governmen-

tal objective of providing fiscal certainty in carrying out the manifold responsibilities of government).

In our view, the General Assembly could rationally conclude that the purpose of obtaining a fiscal savings for the DOC would be furthered by limiting governmental liability for injuries sustained by participants in the Program.

The immunity provision is also rationally related to the legislative purpose of rehabilitating nonviolent offenders by permitting them to participate in a correctional program designed to promote their personal development and self-discipline and by giving them an opportunity, upon completion of the Program, to obtain a reduction in their sentences. Section 17–27.7–104, C.R.S. (1994 Cum.Supp.).

Because of the rigorous nature of the Program, the General Assembly recognized that participants in the Program may be exposed to an increased risk of physical injury. It was not irrational for the General Assembly to be concerned that this increased risk of harm to the participants might expose the government and its employees to a corresponding increase in potential liability. The immunity provision is a reasonable means of protecting the State and its employees from that risk.

■ Moreover, in the area of economics and social welfare, a statutory classification does not violate the equal protection clause merely because the classification is imperfect, and, if the classification has some reasonable basis, it does not offend the Constitution simply because "in practice, it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970).

We conclude that § 17–27.7–103(1) is rationally related to the legitimate state interests of fiscal solvency and the establishment of an alternative correctional program that offers significant benefits to its participants.

### B.

■ We also reject plaintiff's contention that § 17–27.7–103(1) violates his constitutional right to due process of law.

■ The due process guarantee in Colo. Const. art II, § 25 is applicable to rights, not remedies. *State v. DeFoor, supra.* Contrary to plaintiff's assertion, he does not have a constitutionally protected property right to sue the government and its employees for damages for his injuries. *See Fritz v. Regents of University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978) (a resident of a state has no constitutional right to sue the state or its political subdivisions).

In order to meet a challenge to the immunity provision of the Act based on due process, the State only need show that the provision is rationally related to a legitimate state purpose. *See Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo.1987).

As previously determined, the grant of immunity with respect to claims brought by Program participants bears a rational relationship to a legitimate state interest. Thus, plaintiff's contention that the Act violates his right to due process is without merit.

### C.

■ We also reject plaintiff's claim that the immunity provision in the Act denies him access to the courts to remedy injuries suffered.

Colo. Const. art. II, § 6, provides in relevant part that:

> Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character. . . .

■ The constitutional right to access does not create a substantive right. Rather, it simply assures that if a right does accrue under the law the courts will be able to effectuate it. *State Farm Mutual Automobile Insurance Co. v. Broadnax,* 827 P.2d 531 (Colo.1992). Thus, the "access right" guarantees access to the courts only when an individual has a viable claim for relief. *In re Marriage of Hartley,* 886 P.2d 665 (Colo. 1994).

■ The constitutional right of access does not prevent the General Assembly from

changing laws which create rights or from placing valid limitations upon any remedy. *State Farm Mutual Automobile Insurance Co. v. Broadnax, supra; Warren v. Southern Colorado Excavators,* 862 P.2d 966 (Colo. App.1993).

 A burden on a party's right of access to the courts will be upheld if it is reasonable. *State Farm Mutual Automobile Insurance Co. v. Broadnax, supra.*

As we have already determined, the limitation in § 17–27.7–103(1) on a Program participant's right to sue the State, the DOC, and its employees is reasonable and is rationally related to the government's legitimate goals of ensuring the fiscal security of the DOC and of promoting the participants' personal development and self-discipline.

## D.

Plaintiff's final constitutional argument is that the immunity provision in the Act violates Colo. Const. art. V, § 25, which prohibits the General Assembly from enacting special legislation. Again, we disagree.

Colo. Const. art. V, § 25, provides that:

The general assembly shall not pass ... special laws ... granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.

This provision is directed at "legislation that applies to some classes but not to others without a reasonable basis for distinguishing between them, or legislation that exempts some members of a class from coverage without a reasonable basis for the exemption." *City of Montrose v. Public Utilities Commission,* 732 P.2d 1181, 1190 (Colo.1987).

The prohibition against special legislation does not preclude a reasonable and nonarbitrary classification that is based on substantial differences which relate to a legitimate public purpose. *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822 (Colo.1982). A statute that is general and uniform in its operation upon all similarly situated persons does not constitute unconstitutional special legislation. *Denver Urban Renewal Author-*

*ity v. Byrne,* 618 P.2d 1374 (Colo.1980). That is the case here.

The judgment is affirmed.

MARQUEZ and DAVIDSON, JJ., concur.