**H & H WAREHOUSE and Continental Western Insurance Company, Petitioners,**

v.

**Thomas VICORY and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 89CA1964.**

Colorado Court of Appeals, Div. III.

Oct. 25, 1990.

Rehearing Denied Nov. 15, 1990.

Certiorari Denied March 11, 1991.

Watson, Nathan & Bremer, P.C., Anne Smith Myers, Douglas A. Tabor, Denver, for petitioners.

Sarney, Trattler & Waitkus, P.C., William J. Macdonald, Denver, for respondent Thomas Vicory.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, First Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Judge DUBOFSKY.

H & H Warehouse and Continental Western Insurance Company, petitioners, seek review of a final order of the Industrial Claim Appeals Office (Panel) which concluded that claimant had sustained a compensable injury to his arm and awarded temporary disability benefits, medical benefits, and an amount for disfigurement. We affirm.

I.

Petitioners argue that the employer is not liable under the Workers' Compensation Act (Act) for the injury suffered by claimant. We disagree.

While claimant was at work, a door was suddenly and unexpectedly opened which startled him and caused him to hastily move his arm. At the hearing on his claim, claimant presented evidence that an undetected cancerous growth had undermined the strength of the humerus bone and that, as a result, his rapid arm movement in response to the door opening caused the bone to fracture.

The Administrative Law Judge (ALJ) found that claimant had sustained a broken arm in the incident and stated further:

"Claimant's fractured humerus resulted from a combination of abnormal motion in response to a startling stimulus, and the pre-existing weakness in the bone resulting from the cancer condition."

Accordingly, he found claimant entitled to workers' compensation benefits. That order was affirmed by the Panel.

Initially, we note that both petitioners and claimant argue the Panel improperly applied the positional risk doctrine in deciding this matter. We agree that the Panel improperly used this doctrine in affirming the determination of the ALJ, but we nonetheless affirm the Panel's decision because we conclude it reached the right result, albeit for incorrect reasons. Furthermore, we note that the ALJ did not rely on the positional risk doctrine in reaching his decision.

■ The positional risk analysis is applicable when the cause of an event is neither personal to the claimant nor distinctly associated with employment. *In re Question Submitted by U.S. Court of Appeals,* 759 P.2d 17 (Colo.1988). This doctrine has been applied to situations where stray bullets, rapists, and mentally deranged persons have caused injuries to employees while at work. *See* 1 A. Larson, *Workmen's Compensation Law* §§ 10.22 and 11.11(b) (1990). Under such circumstances, the only connection of employment with the injury is that the obligations of work placed the employee in a particular place at a particular time when he was injured by some "neutral force." "Neutral force" means one that is neither personal to the claimant nor distinctly associated with the employment. *In re Question Submitted by U.S. Court of Appeals, supra; Patel v. Thomas,* 793 P.2d 632 (Colo.App.1990); 1 A. Larson, *Workmen's Compensation Law* § 6.10 (1990).

■ In our view, the sudden opening of a door at work is an event associated with employment. If claimant had been physically struck by the door as it was opened and had suffered a fracture from the door striking him, the related injury would be indisputably compensable under the Act. *See In re Question Submitted by U.S. Court of Appeals, supra.* Here, the work place door caused a response which in turn caused the fracture; this does not change the fact that the causative event (opening the door) was distinctly associated with claimant's employment. Hence, the positional risk analysis is inapplicable.

Petitioners next argue that claimant failed to prove the opening of the door was an event peculiar to his employment and that compensation should thus be denied. We disagree.

In *Gates Rubber Co. v. Industrial Commission*, 705 P.2d 6 (Colo.App.1985), this court affirmed the denial of compensation to an employee who was injured from an idiopathic fall. We concluded that a level concrete floor did not present a special hazard because it was a condition found in many nonemployment locations.

Petitioners argue that the sudden opening of a door is not a special hazard of a particular employment. *See Ramsdell v. Horn*, 781 P.3d 150 (Colo.App.1989) (where employee fell from scaffold, injuries caused by fall are compensable as resulting from a special hazard of employment).

That argument fails here, however, because it was the sudden opening of the door, rather than any preexisting condition (*e.g.*, dizziness, seizures), that was the initiating and precipitating cause of the injury. The existing disease of an employee does not disqualify a claim if the employment aggravates, accelerates, or combines with the disease or infirmity to produce the disability for which workers' compensation is sought. 1 A. Larson, *Workmen's Compensation Law* § 12.21 (1990). If, as here, a preexisting condition has weakened a limb so that it could be injured by a mishap which would probably not hurt a healthy arm, the employer is liable for benefits. *Moore v. R.C. Can Co.*, 229 S.W.2d 272 (St. Louis Ct.App.1950).

Petitioners further contend that more than a startling event is required to hold an employer liable for benefits. They implicitly argue there must be a traumatic striking of a claimant before liability attaches. We disagree.

No statutory provision sets out such a requirement. Further, in *Hanover Insurance Co. v. Johnson*, 397 S.W.2d 904 (Tex. Civ.App.1965), the claimant injured his previously weakened back when, while in a squatting position, he turned to see who called to him. The court determined the injury was compensable because claimant's

reason for turning was an incident of employment. *See also International Vermiculite Co. v. Industrial Commission*, 77 Ill.2d 1, 31 Ill.Dec. 789, 394 N.E.2d 1166 (1979).

Thus, we disagree with petitioners' implicit position that an industrial injury is not compensable unless its cause results in the direct striking or hitting of the claimant. We further note that, at the time of the injury, there was no question that under § 8–52–102(1)(b), C.R.S. (1986 Repl.Vol. 3B), the employee was performing a service arising out of and in the course of his employment and that the injury was proximately caused in the course of his employment and was not intentionally self-inflicted.

In *In re Question Submitted by U.S. Court of Appeals, supra,* the court held that the "but for" test should be applied to the totality of the circumstances in determining if a person should receive compensation. Under that test, if, as here, the critical event arises out of the employment and "but for" this event, the injury would not have occurred at such time and place, then the requirements of the Workers' Compensation Act have been met. *See also* 1 A. Larson, *Workmen's Compensation Law* § 6.60 (1990).

## II.

Petitioners next argue that even if they are responsible for the losses directly associated with the fracture, the ALJ and Panel erred in finding them liable for the medical expenses connected with the amputation of claimant's arm and his extensive cancer treatment. Petitioners similarly argue that they are not responsible for the disfigurement/amputation award or the temporary disability payments beyond those immediately associated with the fracture. We disagree.

Here, there was medical testimony that the fracture of a cancerous bone can accelerate the spread of cancer. The ALJ found that the fracture had "acted to aggravate the underlying tumor process, and accelerated that process markedly." Accordingly,

he found petitioner liable for all medical treatment after the date of the injury.

The ALJ stated:

"[I]t is concluded that claimant had a tumor process ongoing in 1983. This tumor process was plainly advancing at a very slow rate prior to the fracture of June 14, 1988.... From the medical records and Dr. Wilkins' deposition, it is very clear that the tumor progressed in an extremely rapid rate after the fracture in June 1988. It is, therefore, concluded that the fracture which resulted in part from the pre-existing weakness in the bone, acted to aggravate the underlying tumor process, and accelerated that process markedly. Within four months, claimant's tumor had multiplied in size by a factor of five or six, necessitating the forequarter amputation. The fracture aggravated a pre-existing condition that was not disabling, and the true nature of which claimant was not aware.

"Because the fracture aggravated the underlying tumor, all of the treatment received by claimant at the hands of his authorized treating physicians, on or after June 14, 1988, is authorized, and is the responsibility of respondents. This includes treatment of the fracture and the aggravated cancer condition."

The ALJ has great discretion in determining the facts and deciding ultimate medical issues. *Talbert v. Industrial Commission*, 694 P.2d 864 (Colo.App.1984).

The ALJ's finding that the fracture significantly increased the rate of the cancer's spread was consistent with the treating physician's testimony that a bone fracture can accelerate the growth rate and spread of cancer, where cancer already exists. Also, the evidence supports the ALJ's findings that prior to the incident the tumor was slow-growing and had not disabled the claimant, but within four months of this incident, the tumor had grown rapidly and resulted in a partial amputation of the arm. Thus, there is a sufficient evidentiary basis to support the Panel's determination that the tumor's growth was accelerated and made significantly worse by the fracture.

*See Calabretta v. Lanorith,* 90 A.D.2d 608, 456 N.Y.S.2d 175 (1982).

The Panel's order is affirmed.

TURSI and NEY, JJ., concur.