2014 CO 7

**CITY OF BRIGHTON and CIRSA, Petitioners,**

v.

**Helen M. RODRIGUEZ, Respondent.**

**Supreme Court Case No. 12SC737**

Supreme Court of Colorado.

February 3, 2014

Attorneys for Petitioners: Ritsema & Lyon, P.C., Kelly F. Kruegel, Denver, Colorado.

Attorneys for Respondent: The Frickey Law Firm, Janet Frickey, Lakewood, Colorado, Dean Neuwirth P.C. Dean Neuwirth, Denver, Colorado.

Attorneys for Amicus Curiae WCEA: William J. Macdonald P.C., William J. Macdonald, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 We granted certiorari to consider whether an "unexplained" fall—i.e., a fall with a truly unknown cause or mechanism— satisfies the "arising out of" employment requirement of Colorado's Workers' Compensation Act, section 8–41–301(1)(c), C.R.S. (2013), and is thus compensable as a work-related injury. We also granted certiorari to decide whether an employer fails to meet its burden to modify an admission of liability under section 8–43–201(1), C.R.S. (2013), when it fails to prove that an employee's injuries did not "arise out of" employment.[1]

¶ 2 Respondent Helen Rodriguez injured herself after falling down a flight of stairs at work. While we agree with the court of appeals' holding that Rodriguez's unexplained fall was compensable, we disagree with its reasoning. The court of appeals erred when it endorsed Rodriguez's view that her injuries arose out of employment because "uncertainty about the cause of an injury cannot properly bar a workers' compensation claim if every one of the potential causes satisfie[d] the conditions of recovery." See Rodriguez v. ICAO, 2012 COA 139, ¶¶ 6–7, —— P.3d ——. We hold that an unexplained fall necessarily stems from a "neutral" risk, i.e., a risk that is attributable neither to the employment itself nor to the employee himor herself. Under our longstanding "but-for" test, such an unexplained fall "arises out of" employment if the fall would not have occurred but for the fact that the conditions and obligations of employment placed the employee in the position where he or she was

1. Specifically, we granted certiorari to resolve the following issues, which we reframed slightly for clarity:

    1. Whether the court of appeals erred in finding that a fall that occurred during the course of an employee's employment, but whose exact cause/mechanism was unknown, satisfies the "arising out of" employment requirement of section 8–41– 301(1)(c), and is compensable under the Workers' Compensation Act.

    2. Whether the court of appeals erred in finding that an employer, who initially admitted liability for the injuries of its employee, did not meet its burden under section 8– 43–201(1), because it failed to prove that the employee's injuries did not "arise out of" the employee's employment.

injured. Rodriguez's unexplained fall arose out of employment under this test.

¶ 3 In addition, we hold that under section 8–43–201(1), a party seeking to modify an issue determined by a general or final admission, a summary order, or a full order has the burden to prove by a preponderance of the evidence that such a modification should be made. Here, Petitioners City of Brighton and the Colorado Intergovernmental Risk Sharing Agency (collectively "the City") initially admitted liability for Rodriguez's injuries but later sought to modify that admission. We affirm the court of appeals' holding that the City failed to meet the burden of proof to make this modification. *See Rodriguez*, ¶ 10.

## I. Facts and Procedural History

¶ 4 Rodriguez worked as a special events coordinator for the City of Brighton. On January 8, 2009, Rodriguez was walking to her office, which was located in the basement of the Brighton City Hall building ("City Hall"). She paused at the top of a flight of concrete stairs running along the outside of City Hall to greet two of her co-workers, Scott Miller and Dennis Williams, who were standing toward the bottom of the stairs. After a brief chat with Miller and Williams, she began to walk down the stairs, which were dry and unobstructed. All of a sudden, she tumbled forward. Rodriguez hit her head, lost consciousness, and did not remember precisely how she fell—for example, she did not know whether she tripped, slipped, lost her balance, or something else entirely. Prior to falling, Rodriguez was not experiencing a headache, neck pain, dizziness, or vision problems.

¶ 5 After her fall, Rodriguez was taken by ambulance to a nearby emergency room. She underwent Computed Tomography ("CT") and Magnetic Resonance Angiogram ("MRA") scans, which revealed four unruptured aneurysms on the right side of her brain. A few weeks later, she underwent surgery for these aneurysms.

¶ 6 As a result of her fall, Rodriguez experienced head, neck, and back injuries. Twenty days after Rodriguez's fall, the City filed a general admission of liability ("GAL")

for these injuries. In late 2010, however, the City sought to modify that GAL (and effectively withdraw it entirely), arguing that the injuries resulting from Rodriguez's fall were not compensable because they did not "arise out of" her employment. Specifically, the City argued that either (1) her fall was caused by her brain aneurysms, or (2) her fall was "unexplained." A hearing on this matter was held before Administrative Law Judge Ted A. Krumreich ("the ALJ") in December of 2010.

¶ 7 Miller and Williams, the only witnesses to Rodriguez's fall, testified at this hearing. Both were located toward the bottom of the stairs when they paused to chat with Rodriguez. Neither knew why Rodriguez fell as she did. For example, neither saw her trip, slip, or lose her balance. Both testified that the stairs appeared to be dry and unobstructed. Specifically, Miller stated that Rodriguez took two-to-four steps, and then "all of a sudden just went forward." Williams testified that he observed Rodriguez descend a few steps prior to pitching forward, and that it appeared as if someone "just literally yanked a rug out from underneath her." Miller and Williams also testified that Rodriguez had been speaking and acting normally immediately prior to her fall.

¶ 8 At the hearing, the ALJ also heard testimony from Dr. Jeffrey Wunder, who had performed an independent medical examination of Rodriguez at the City's request. Dr. Wunder opined that the "most likely" cause of Rodriguez's fall was a fainting or dizziness episode caused by Rodriguez's brain aneurysms, although he could not state this conclusion with a "reasonable degree of medical probability." The ALJ also reviewed two opposing reports from Dr. Lynn Parry and Dr. Alexander Feldman. Both Dr. Parry and Dr. Feldman opined that Rodriguez's brain aneurysms were not the cause of her fall, as the aneurysms were asymptomatic prior to the fall.

¶ 9 In his Order, the ALJ specifically discredited Dr. Wunder's testimony and credited the testimony of the two other doctors. The ALJ found that Rodriguez's fall was not precipitated by her brain aneurysms, nor was

it caused by her tripping or missing a step or by any dangerous condition on the stairs. The ALJ noted that the witnesses to the fall were unable to state precisely why it occurred and that Rodriguez herself could not remember. Thus, he concluded that Rodriguez's fall was "unexplained." As a result, he concluded that her injuries were noncompensable, because in failing to describe her fall's precise causal mechanism, Rodriguez also failed to show that her injury "arose out of" her employment as required by section 8–41–301(1)(c). Accordingly, the ALJ allowed the City to modify its GAL, concluding that it had sustained its burden under section 8–43–201(1). The Industrial Claims Appeals Office ("ICAO") affirmed the ALJ's decision, and Rodriguez appealed.

¶ 10 The court of appeals set aside the ICAO's order. Because the City initially admitted liability for Rodriguez's injuries and then later contested liability based on the "arising out of" requirement of the Act, the court of appeals held that the City was required to prove that Rodriguez's injuries *did not* "arise out of" her employment. *Rodriguez*, ¶ 10 (citing § 8–43–201(1)) ("[A] party seeking to modify an issue determined by a general or final admission ... shall bear the burden of proof for any such modification."). Consequently, the court of appeals held that the City did not carry its burden because "the ALJ's finding—that the fall was unexplained—signal[ed] a failure of proof on [the City's] part." *Id.* Rodriguez's injuries were therefore held to be compensable under the Act. Although not central to its holding regarding compensability, the court of appeals also endorsed Rodriguez's argument that "uncertainty about the cause of an injury cannot properly bar a workers' compensation claim if every one of the potential causes satisfies the conditions of recovery." *Id.* at ¶ 6. We granted certiorari.

## II. Standard of Review

¶ 11 The determination of whether an employee's injuries arose out of employment is a question of fact for resolution by the ALJ. *See In re Question Submitted by U.S. Court of Appeals for the Tenth Circuit*, 759 P.2d 17, 20 (Colo.1988) ("The determina-

tion of whether an employee's injuries arose out of an employment relationship depends largely on the facts presented in a particular case."). "The totality of the circumstances must be examined in each case to see whether there is a sufficient nexus between the employment and the injury." *Id.* The ALJ's factual findings must be upheld if they are supported by substantial evidence. § 8–43–301(8), C.R.S. (2013); *see also Panera Bread, LLC v. ICAO*, 141 P.3d 970, 972 (Colo.App. 2006) (describing the substantial evidence standard).

¶ 12 Unlike factual findings, this Court reviews an administrative agency's conclusions of law de novo. *Colo. Dep't of Labor & Emp't v. Esser*, 30 P.3d 189, 193 (Colo.2001). Thus, while we give considerable weight to the ICAO's reasonable interpretations of its own enabling statute, we are not bound by its legal interpretations. *See Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 326 (Colo.2004); *see also* § 8–43–308, C.R.S. (2013) (providing that an appellate court may reverse an order of the ICAO if "the award or denial of benefits is not supported by applicable law").

¶ 13 Specifically, this case requires us to determine the meaning of two sections of Colorado's Workers' Compensation Act ("the Act"). "To discern the legislative intent, we look first to the plain and ordinary meaning of the statutory language." *People v. Madden*, 111 P.3d 452, 457 (Colo.2005). A commonly accepted meaning is preferred over a strained or forced interpretation. *M.S. v. People*, 812 P.2d 632, 636 (Colo.1991). Additionally, courts look to the overall statutory context when construing meaning. *Bd. of Cnty. Comm'rs v. Hygiene Fire Prot. Dist.*, 221 P.3d 1063, 1066 (Colo.2009). Importantly, "To effectuate its remedial and beneficent purposes, we must liberally construe the Act in favor of the injured employee." *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 398 (Colo.2010).

## III. Analysis

¶ 14 First, we review the well-established analytical categories that we have used to evaluate the three types of risks that cause injuries to employees in the workplace. We

hold that an "unexplained" fall—i.e., a fall with a truly unknown cause or mechanism—falls into the "neutral risk" category. Consistent with our longstanding precedent regarding neutral risks, we also hold that the "but-for" test applies to determine whether unexplained falls "arise out of" employment. Next, we apply this test to the facts of Rodriguez's case and hold that her injury "arose out of" employment under section 8–41–301(1)(c) and is accordingly compensable under the Act.

¶ 15 Second, we hold that under section 8–43–201(1), a party seeking to modify a general or final admission, a summary order, or a full order has the burden to prove by a preponderance of the evidence that such a modification should be made. We then apply this burden to the facts of Rodriguez's case and conclude that the City did not meet this burden to modify its GAL.

## A. Rodriguez's Unexplained Fall Arose Out of Employment and Was Compensable Under the "But–For" Test

¶ 16 To recover benefits under the Act, an employee's injury must both occur "in the course of" employment and "aris[e] out of" employment. § 8–41–301(1)(c). The employee must meet this standard by a preponderance of the evidence. § 8–43–201(1). The parties in this case agree that Rodriguez's injury occurred "in the course of" her employment; thus, our analysis focuses on determining whether her unexplained fall "arose out of" her employment.

¶ 17 The term "arising out of" refers to the origin or cause of an employee's injury. *Horodyskyj v. Karanian*, 32 P.3d 470, 475 (Colo.2001). Specifically, the term calls for examination of the causal connection or nexus between the conditions and obligations of employment and the employee's injury. *Id.* An injury "arises out of" employment when it has its "origin in" an employee's work-related functions and is "sufficiently related to" those functions so as to be considered part of employment. *Id.* It is not essential, however, that an employee be engaged in an obligatory job function or in an activity resulting in a specific benefit to the employer at the time of the injury. *City of*

*Boulder v. Streeb*, 706 P.2d 786, 791 (Colo. 1985); *see also In re Question*, 759 P.2d at 22 ("The employee need not necessarily be engaged in the actual performance of work at the moment of injury in order to receive compensation.").

¶ 18 Here, the City concedes that the activity causing Rodriguez's injury—walking down the stairs to her basement office—was sufficiently work-related to be considered part of Rodriguez's employment. It argues, however, that Rodriguez necessarily could not provide a sufficient causal connection between her work activities and her injuries because she could not provide evidence regarding the precise *mechanism* for her fall down the stairs (e.g., tripping, slipping, or losing her balance). We disagree.

¶ 19 All risks that cause injury to employees can be placed within three well-established, overarching categories: (1) *employment risks*, which are directly tied to the work itself; (2) *personal risks*, which are inherently personal or private to the employee him- or herself; and (3) *neutral risks*, which are neither employment related nor personal. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* §§ 4.01–4.03, at 4–1 to –3 (2013) (hereinafter *Larson*); *see also Horodyskyj*, 32 P.3d at 475–77 (dividing assaults by co-employees into these three categories for the purpose of determining whether an assault "arose out of" employment).

¶ 20 The first category, employment risks, encompasses risks inherent to the work environment itself. Employment risks include, for example, a gas explosion at work that burns an employee's body, *Rio Grande Motor Way v. De Merschman*, 100 Colo. 421, 422, 68 P.2d 446, 447 (1937), or the breakdown of an industrial machine that partially amputated an employee's finger, *Leffler v. ICAO*, 252 P.3d 50, 50 (Colo.App.2010). The causal connection between such prototypical industrial risks and employment is intuitive and obvious, and the resulting injuries are universally considered to "arise out of" employment under the Act. *See id.*; *see also Larson*, § 4.01, at 4–2. Rodriguez's injury does not fit into this first risk category be-

cause the stairs were dry and free of obstructions, and the ALJ specifically found that nothing about the condition of the stairs contributed to Rodriguez's fall. *See In re Margeson*, 162 N.H. 273, 27 A.3d 663, 667 (2011) ("Typically, a slip and fall is only attributable to an employment-related risk if it results from tripping on a defect or falling on an uneven or slippery surface on an employer's premises.").

¶ 21 In contrast, the second category contains risks that are entirely personal or private to the employee him- or herself. *See Horodyskyj*, 32 P.3d at 475–77; *Larson*, § 4.02, at 4–2. These risks include, for example, an employee's preexisting idiopathic [2] illness or medical condition that is completely unrelated to his or her employment, such as fainting spells, heart disease, or epilepsy. *See, e.g., Irwin v. Indus. Comm'n*, 695 P.2d 763, 765–66 (Colo.App.1985) (holding that an employee who had a medical history of blacking out and who did so at work did not suffer an injury "arising out of" employment); *Gates Rubber Co. v. Indus. Comm'n*, 705 P.2d 6, 7 (Colo.App.1985) (holding same, regarding an employee who had an epileptic seizure and struck his head on a level, nonslippery concrete floor). Such "personal risks" also include an assault at work arising solely from an employee's private, and not professional, life. *See, e.g., Velasquez v. Indus. Comm'n*, 41 Colo.App. 201, 202–03, 581 P.2d 748, 749 (1978) (holding that employees who were shot by a co-worker at work did not suffer injuries "arising out of" employment because the assailant had purely personal, and not employment-related, motivations for the attack); *Horodyskyj*, 32 P.3d at 478 (holding that most claims of sexual harassment fall into "the category of inherently private assaults that do not arise out of the employment" (internal quotation marks omitted)).

¶ 22 These types of *purely* idiopathic or personal injuries are generally not compensable under the Act, unless an exception applies.[3] *See Velasquez*, 41 Colo.App. at 202–03, 581 P.2d at 749; *see also Irwin*, 695 P.2d at 765. Here, however, the ALJ specifically found that Rodriguez's fall was not attributable to her preexisting brain aneurysms and that there was no other evidence to indicate that her fall was caused by an idiopathic condition. We are bound by that factual finding. *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 415 (Colo. App.1995) (stating that a reviewing court should defer to the ALJ's resolution of conflicts in the evidence, including the medical evidence). Thus, Rodriguez's fall was not caused by a personal risk.

¶ 23 The third category includes injuries caused by so-called "neutral risks." *Horodyskyj*, 32 P.3d at 477. Such risks are considered neutral because they are not associated with either the employment itself nor with the employee him- or herself. *Id.* For example, a neutral risk was implicated when: (1) an employee was killed by car thieves on the way back from an employment errand, *Indus. Comm'n of Colo. v. Hunter*, 73 Colo.

---

**2.** We have never explicitly defined "idiopathic." We have, however, used the term consistently with the leading treatise in the field:

> Generally understood within the workers' compensation framework to mean "self-originated," [idiopathic] injuries usually spring from a personal risk of the claimant, e.g., heart disease, epilepsy, and the like. *Such injuries are to be contrasted with those that are truly "unexplained."* The latter generally are considered [to have arisen] from a neutral risk. ... Idiopathic injuries are said to have arisen from a personal risk. Idiopathic injuries, therefore, often are not compensable.

*Idiopathic injuries, Larson's Workers' Compensation Glossary*, http://www.lexisnexis.com/legalnewsroom/workers-compensation/b/worker-comp-glossary/archive/2012/11/11/larson-s-

workers-compensation-glossary.aspx (last visited Jan. 30, 2014) (emphasis added).

**3.** For example, when it comes to idiopathic injuries, the "special hazard" doctrine represents an important exception to the general rule of noncompensability. Under this doctrine, an injury is compensable even if the most direct cause of that injury is a preexisting idiopathic disease or condition so long as a special employment hazard also contributed to the injury. *See, e.g., Ramsdell v. Horn*, 781 P.2d 150, 152 (Colo.App.1989) (holding that a carpenter's injuries from a fall were compensable even though he had an epileptic seizure directly causing his fall because the fall occurred while he was working on a twenty-five-foot-high scaffold, a "special hazard" of employment).

226, 227–30, 214 P. 393, 394 (1923);[4] (2) a farm hand was killed by a lightning strike while tending to his employer's horses, *Aetna Life Ins. Co. v. Indus. Comm'n*, 81 Colo. 233, 234, 254 P. 995, 995 (1927); (3) an employee was murdered by a random, insane man while on the job, *London Guarantee & Accident Co. v. McCoy*, 97 Colo. 13, 15–17, 45 P.2d 900, 901–02 (1935); and (4) an employee was injured after a co-employee accidentally discharged a hunting rifle in the employer's parking lot, *Kitchens v. Dep't of Labor & Emp't*, 29 Colo.App. 374, 376, 379–80, 486 P.2d 474, 475–77 (1971).

¶ 24 We hold that an unexplained fall necessarily constitutes a neutral risk. It is clear that Rodriguez's fall was not the result of an occupational hazard or a personal risk. Because the precise mechanism of her unexplained fall was neither occupational nor personal, by definition, such a fall is fundamentally similar to other neutral risks—like car thieves, lightning, murderous lunatics, and stray bullets—because none of these risks has a connection with the employee's work or with the employee him- or herself. *See Larson*, § 7.04[1][c], at 7–31 ("[W]here the neutral-risk concept has been accepted for other purposes, a lot of confusion, circumlocutions, and fictions could be avoided in the unexplained-fall cases by merely accepting the proposition that what is unexplained is neutral.").

¶ 25 Importantly, however, injuries stemming from neutral risks, whether such risks be an employer's dry and unobstructed stairs or stray bullets, "arise out of" employment because they would not have occurred *but for* employment. That is, the employment causally contributed to the injury because it obligated the employee to engage in employment-related functions, errands, or duties at the time of injury. *See Horodys-*

*kyj*, 32 P.3d at 477 ("[A]n injury is compensable under the Act as long as it is triggered by a neutral source that is not specifically targeted at a particular employee and would have occurred to any person who happened to be in the position of the injured employee at the time and place in question."); *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 796 P.2d 893, 898 (1990) ("In a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that . . . but-for reasoning satisfie[s] the 'arising [out of]' requirement." (internal quotation marks omitted)).

¶ 26 For over eighty years, this Court has consistently applied the "but-for" test (otherwise known as the "positional-risk" test) to injuries caused by neutral risks.[5] *See Aetna*, 81 Colo. at 234, 254 P. at 995 (holding that a lightning accident "arose out of" employment because the "employment required [the employee] to be in a position where the lightning struck him"); *In re Question*, 759 P.2d at 20 ("This court has most frequently used the positional-risk or 'but for' standard to define the 'arising out of' language."); *Horodyskyj*, 32 P.3d at 477 ("[W]e have applied the positional-risk or 'but-for' test to determine whether such injuries [attributable to neutral risks] arise out of the employment."). We reaffirm *Aetna*'s holding that injuries from neutral risks "arise out of" employment. We therefore hold that the "but-for" test applies to unexplained falls because an unexplained fall stems from a neutral risk. The "but-for" test provides that an injury from a neutral risk "arises out of" employment "if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the] claimant in the position where he [or

---

4. *See also, e.g., Indus. Comm'n of Colo. v. Pueblo Auto Co.*, 71 Colo. 424, 428, 207 P. 479, 480 (1922) (holding that a car salesman's death arose out of employment when he was killed by a car thief); *State Comp. Ins. Fund v. Indus. Comm'n*, 80 Colo. 130, 134, 249 P. 653, 655 (1926) (holding that an employee's injuries arose out of employment when he was robbed and murdered while on an employment errand).

5. As we noted in *In re Question*, at least four other tests can be used in examining injuries caused by neutral risks, including the peculiar-risk doctrine, the increased-risk doctrine, the actual-risk doctrine, and the proximate cause test. 759 P.2d at 20 n. 4. Over eighty years ago, however, in *Aetna*, 81 Colo. at 234, 254 P. at 995, this Court implicitly chose and applied the "but-for" test to the prototypical neutral risk: a lightning strike. We have consistently applied this test since our holding in *Aetna*. *See infra* at ¶ 31.

she] was injured." *Horodyskyj*, 32 P.3d at 477 (emphasis added) (quoting *Larson*, § 3.05, at 3–5 to –6).

¶ 27 By applying the "but-for" test to unexplained falls, we reverse the court of appeals to the extent it held that an unexplained fall is compensable when "every one of the potential causes [of the fall] satisfies the conditions of recovery." *Rodriguez*, ¶¶ 6–7. Such a holding misses the mark because it introduces a kind of speculative fiction about *all* of the possible causes of a fall; such speculation is unhelpful when the evidence indicates that the cause of a fall is unknown. *See Larson*, § 7.04[1][c], at 7–31. This fiction is also entirely avoidable if a fall is properly categorized as arising from *either* an employment-related risk *or* a personal/idiopathic risk *or* a neutral risk. If a fall is the result of an employment-related risk, it very likely "arose out of" employment; if it is the result of a preexisting, idiopathic condition, it did not (unless an exception applies). If the cause of a fall is truly unknown, however, and the fall thus stems from a neutral risk, the "but-for" test is applied to determine whether the fall "arose out of" employment. Specifically, the resulting injury "arises out of" employment if it would not have occurred *but for* the fact that the condi-

tions and obligations of the employment placed the employee in the position where he or she was injured.

¶ 28 Moreover, some form of the "but-for" test appears to be the approach taken by the majority of states that have addressed unexplained falls.[6] *See Larson*, 7.04[1][a], at 7–24 ("In appraising the extent to which courts are willing to accept this general but-for theory ... it is significant to note that most courts confronted with the unexplained-fall problem have seen fit to award compensation."). We are simply more persuaded by this approach than other possible alternatives.[7]

■ ¶ 29 Significantly, the "but-for" test does not relieve the employee of the burden of proving causation, nor does it suggest that all injuries that occur at work are compensated under workers' compensation law.[8] Rather, it acknowledges that an employee meets his or her burden to prove that an injury "arose out of" employment when the employee proves that an injury (1) had its "origin in" his or her work-related functions and is "sufficiently related to" those functions so as to be considered part of employment, and (2) arose from a neutral risk, whether that neu-

6. *See, e.g., Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 796 P.2d 893, 897–98 (1990); *Delaplaine Farm Ctr. v. Crafton*, 2011 Ark. App. 202, 382 S.W.3d 689, 694 (2011); *McCready v. Payless Shoesource*, 41 Kan.App.2d 79, 200 P.3d 479, 487 (2009); *Mulready v. Univ. Research Corp.*, 360 Md. 51, 756 A.2d 575, 576, 583 (2000); *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667, 674 (2000); *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E.2d 865, 868 (1963); *Grimaldi v. Shop Rite Big V*, 90 A.D.2d 608, 608, 456 N.Y.S.2d 176 (1982); *Turner v. B Sew Inn*, 18 P.3d 1070, 1076 (Okla.2000); *Steinberg v. S.D. Dep't of Military & Veterans Affairs*, 607 N.W.2d 596, 604–05 (S.D.2000).

7. A few states, such as Oregon and Ohio, require an employee to affirmatively rule out any idiopathic causes for a fall, which permits an inference that a fall arose out of employment. *See, e.g., Phil A. Livesley Co. v. Russ*, 296 Or. 25, 672 P.2d 337, 341 (1983); *Waller v. Mayfield*, 37 Ohio St.3d 118, 524 N.E.2d 458, 463 (1988). We conclude that this approach is misguided because it places an employee in the extremely difficult position of attempting to prove a negative. *See Elkins v. United States*, 364 U.S. 206, 218, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[A]s

a practical matter it is never easy to prove a negative...."); *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 231 (Colo.2001) (placing a particular burden of proof on a party because that party was "in a much better position to prove that it has been prejudiced" and because the other party would "be forced to prove a negative"). This approach also conflates what should be distinct analytical categories. If an idiopathic cause contributes to a fall, then, by definition, the fall is not actually "unexplained." *See Larson*, § 7.04[1][b], at 7–27 ("Whenever personal disease or weakness contributes to the fall, an entirely new set of rules comes into play, since the risk is no longer neutral but either personal, or, perhaps 'mixed'...."); *Logsdon*, 618 N.W.2d at 675 ("When there is at least some evidence of a possibility of a personal or idiopathic factor contributing to the fall, the fall is not properly categorized as a purely unexplained fall.").

8. As previously established, injuries caused by preexisting idiopathic conditions are generally not compensable (unless an exception applies), nor are injuries caused by purely "personal" risks arising solely from an employee's private, and not professional, life.

tral risk is an unexplained fall down an employer's staircase or "an arrow out of nowhere." *See Larson,* § 7.04[1][b], at 7–28.

¶ 30 Demanding more precision about the exact mechanism of a fall is inconsistent with the spirit of a statute that is designed to compensate workers for workplace accidents regardless of fault. *Sigala v. Atencio's Mkt.,* 184 P.3d 40, 43 (Colo.2008); *see also Frohlick Crane Serv., Inc. v. Mack,* 182 Colo. 34, 38, 510 P.2d 891, 893 (1973) ("The statutory scheme grants the employee compensation . . . even though the employee may be negligent and even if the employer is not negligent."). Such an approach would also be antithetical to the clear remedial purposes of the Act. *See Williams v. Kunau,* 147 P.3d 33, 38 (Colo.2006) ("The Act is remedial and beneficent in purpose and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families."); *United Airlines, Inc. v. ICAO,* 993 P.2d 1152, 1161 (Colo.2000) (supporting an interpretation of the Act that advanced "the goals of providing a dignified means of support to disabled workers and passing on the costs of industrial disabilities to consumers").

¶ 31 Additionally, a more demanding causation approach with regard to unexplained falls is inconsistent with our longstanding precedent regarding the compensability of injuries caused by neutral risks. For over eighty years, we have awarded benefits in cases involving neutral risks, which—by definition—are not connected to the employment itself. *See, e.g., Hunter,* 73 Colo. at 230, 214 P. at 394 (murder by car thieves); *Aetna,* 81 Colo. at 234, 254 P. at 995 (lightning strike); *McCoy,* 97 Colo. at 15–17, 45 P.2d at 901–02 (murder by random insane man); *Kitchens,* 29 Colo.App. at 376, 379–80, 486 P.2d at 475–77 (co-employee accidentally shooting another co-employee with hunting rifle). Indeed, employees must only demonstrate that there were specific connections to employment in cases *not* involving neutral risks. For example, if an employee has epilepsy and is injured after having a seizure at work, the employee must show that he or she was exposed to an additional "special hazard" of employment. *See, e.g., Ramsdell v. Horn,*

781 P.2d 150, 152 (Colo.App.1989) (holding that a carpenter's injuries from a fall were compensable because even though he fell as a result of an epileptic seizure, he did so while located on a twenty-five-foot-high scaffold, a "special hazard" of employment).

¶ 32 The City relies on *Finn v. Industrial Commission,* 165 Colo. 106, 437 P.2d 542 (1968), for the proposition that an unexplained fall can never "arise out of" employment. Specifically, the City points to the following language:

> We do not agree that a presumption exists that an employee found injured on his employer's premises is presumably injured from something arising out of his work, i.e., that the doctrine of [r]es ipsa loquitur or some variation of it applies here. On the contrary, the burden of proof in these cases is on the claimant who must show a direct causal relationship between his employment and his injury.

*Id.* at 109, 437 P.2d at 544. A close examination of *Finn's* facts reveals, however, that this Court upheld the denial of benefits in that case because the employee's injury was idiopathic.

¶ 33 In *Finn,* an employee was found lying unconscious on the floor of a brewery, "with blood running from his ears." *Id.* at 107, 437 P.2d at 543. While the employee speculated that he might have been hit by a forklift, he could not remember precisely how he had been injured and there were no witnesses to his accident. *Id.* at 108, 437 P.2d at 543. Notably, however, the fact-finder specifically credited testimony implying that the employee's injury was caused by some sort of idiopathic condition: "A supervisor who had seen the claimant a few minutes before the accident found him twisted behind some boxes, his feet thrashing as he repeatedly lifted his head which fell striking his face on the floor. . . . [T]he onset of the injury was *triggered by some 'mysterious innerbody malfunction.'" Id.* at 108, 437 P.2d at 543 (emphasis added).

¶ 34 Thus, while *Finn's* rationale is not a model of clarity, its central holding—that an injury due to a "mysterious innerbody malfunction" does not "arise out of" employment merely because that injury occurs at work—

is entirely consistent with this Court's precedent regarding the non-compensability of idiopathic injuries. *See Irwin*, 695 P.2d at 765–66 (acknowledging *Finn*'s holding and stating that "we leave open for determination at a further time the question whether a *truly unexplained* fall ... arises out of employment and is compensable" (emphasis added)); *Brown v. Indus. Comm'n*, 167 Colo. 391, 393–94, 447 P.2d 694, 695 (1968) (citing *Finn*'s "direct causal relationship" language in holding that an employee's back injury did not "arise out of" employment because it was caused by his preexisting idiopathic condition).

¶ 35 We clarify here, however, that our statement in *Finn* that an employee must show a "direct causal relationship between his employment and his injury," 165 Colo. at 109, 437 P.2d at 544, applies only to cases involving idiopathic—and thus not unexplained—falls.[9] Indeed, this statement from *Finn* is merely a restatement of the "special hazard" doctrine.[10]

¶ 36 In sum, it is clear that Rodriguez's fall "arose out of" her employment. The ALJ specifically found that her fall was not caused by an employment-related risk (e.g., slippery, obstructed, or otherwise dangerous stairs), nor by a personal, idiopathic risk (e.g., her aneurysms). Rather, the cause was unknown, and thus her fall was unexplained. We hold that such an unexplained fall is necessarily caused by a neutral risk. Because Rodriguez's fall would not have occurred but for the fact that the conditions and obligations of her employment—namely, walking to her office during her work day—

placed her on the stairs where she fell, her injury "arose out of" employment and is compensable.

### B. A Preponderance Standard Applies When Parties Seek to Modify a General Admission of Liability

¶ 37 An employer must provide notice to an employee regarding whether it will contest or admit liability for a workplace injury within twenty days of being made aware of that injury. § 8–43–203(1)(a), C.R.S. (2013). When an employer decides not to contest liability and instead files an admission, the employer "has, in effect, admitted that the claimant has sustained the burden of proving entitlement" to benefits. *Rocky Mtn. Cardiology v. ICAO*, 94 P.3d 1182, 1184 (Colo.App.2004). Indeed, once an admission has been filed, the employer may not unilaterally modify that admission if the employer comes to believe an injury is not compensable. *See* § 8–43–203(2)(d); § 8–43–303, C.R.S. (2013). Rather, the employer must request a hearing before an ALJ and continue to make benefits payments until the ALJ enters an order allowing modification of the admission, in full or in part. § 8–43–203(2)(d); § 8–43–303; *see also Rocky Mtn. Cardiology*, 94 P.3d at 1185 ("An employer is required to continue paying pursuant to an admission of liability and may not unilaterally withhold payment until a hearing is held to determine whether there is sufficient evidence to permit withdrawal of the admission.").

¶ 38 Section 8–43–201(1) does not specify what burden of proof governs the modifica-

---

9. We note that this analysis conflicts with the following unpublished court of appeals' decisions, which held that unexplained falls were noncompensable injuries: *Colo. Springs Sch. Dist. v. ICAO*, No. 11CA2283, 2012 WL 3538972 (Colo.App. Aug. 16, 2012); *Morgan Corp. v. ICAO*, No. 11CA0102, 2011 WL 6793783 (Colo. App. Dec. 22, 2011); *La Farge Constr., Inc. v. ICAO*, No. 09CA2114, 2010 WL 3917944 (Colo. App. Sept. 30, 2010); *Lientz v. ICAO*, No. 03CA0380, 2004 WL 396340 (Colo.App. Mar. 4, 2004).

10. The City also points to the older, but similarly inapposite, case of *Industrial Commission v. London & Lancashire Indemnity Co.*, 135 Colo. 372, 374, 311 P.2d 705, 706 (1957), in support of its position that unexplained injuries cannot "arise

out of" employment. That case involved an employee who died after falling from a fourth-floor window of the employer's warehouse. *Id.* at 374, 311 P.2d at 706. Notably, however, the employer presented substantial—and unrebutted—evidence that the employee's death was not due to a work-related accident (e.g., being pushed out of or falling out of the window). *Id.* at 377–78, 311 P.2d at 707–08. Instead, there was evidence that the employee's death was the result of suicide, meaning that it was "intentionally self-inflicted" and thus by definition could not "arise out of" employment. *Id.* at 377–78, 311 P.2d at 707–08. In contrast, there was no evidence here that Rodriguez's fall was "self-inflicted."

tion of an admission. It only provides a specific burden for the employee in making his or her initial claim: "A claimant in a workers' compensation claim shall have the burden of proving entitlement to benefits *by a preponderance* of the evidence ...." § 8–43–201(1) (emphasis added) ("the initial claim provision"). Later, in the same sentence of the same provision, the Act states that "a party seeking to modify an issue determined by a general or final admission, a summary order, or a full order *shall bear the burden of proof* for any such modification." *Id.* (emphasis added) ("the modification provision"). The Act's other provisions do not define this burden of proof more precisely, and there is no case law discussing the specific quantum of evidence necessary to sustain the burden for modifying an admission. Accordingly, in order to determine whether the City met its burden, we must clarify the burden imposed by the statute.

■ ¶ 39 We hold that a party seeking to modify an issue determined by a general or final admission must prove that it is entitled to this modification by a preponderance of the evidence.[11] Because the initial claim provision and the modification provision appear in the very same sentence of the very same statutory provision, it is logical that the General Assembly would anticipate that the same burden would apply to both.[12] Moreover, the legislature is aware that the default burden imposed in civil actions is a preponderance standard. *See* § 13–25–127, C.R.S. (2013); *Leonard v. McMorris,* 63 P.3d 323, 331 (Colo. 2003) ("We presume that the General Assembly knows the pre-existing law when it adopts new legislation or makes amendments to prior acts.").

¶ 40 If the legislature wanted a higher burden of proof to apply to modifications of admissions, it would have specifically provided for such a burden. The legislature was clearly capable of instituting a higher burden if it felt so inclined, as evidenced by the use of a "clear and convincing" burden of proof elsewhere in the Act. *See* § 8–42–107(8)(b)(III), C.R.S. (2013) (providing that a finding regarding maximum and permanent medical improvement made by an independent medical examiner "may be overcome only by clear and convincing evidence"); *cf. Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora,* 221 P.3d 399, 419 (Colo.2009) ("When the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully.").

■ ¶ 41 In this case, the City sought to modify its GAL by withdrawing its admission of liability entirely. Consequently, the City had the burden to prove by a preponderance of the evidence that Rodriguez's injuries were not compensable because her claim failed to meet one or more of the requirements in section 8–41–301(1). The City's contention that it met its burden to modify its GAL turns on its erroneous legal conclusion that an unexplained fall cannot "arise out of" employment. We hold, however, that unexplained falls can be compensable under the "but-for" test; we also hold that Rodriguez's unexplained fall was compensable under that test. Because the ALJ specifically discredited the idiopathic explanation for Rodriguez's injury—and we are bound by that finding, *see Metro Moving & Storage*

11. This preponderance standard necessarily also applies to a party seeking to modify an issue determined by a summary order or a full order. *See* § 8–43–201(1).

12. The modification provision was added to the Act only four years ago; thus, the legislature was aware of the preponderance burden on the claimant. *See* Workers' Compensation Act of Colorado, ch. 184, sec. 3, § 8–43–201, 2009 Colo. Sess. Laws 806, 807; *see also Leonard v. McMorris,* 63 P.3d 323, 331 (Colo.2003) ("We presume that the General Assembly knows the pre-existing law when it adopts new legislation or makes amendments to prior acts."). The ICAO recently

noted that the principal aim of this 2009 amendment was to reverse the effect of *Pacesetter Corp. v. Collett,* 33 P.3d 1230, 1233 (Colo.App.2001), which essentially imposed the preponderance burden on the employee despite the fact that the employer had sought modification of its admission. *In the Matter of the Claim of Scotty Dunn,* W.C. No. 4–754–838–01, 2013 WL 5572762, at *2 (Colo. ICAO Oct. 1, 2013). The amendment, then, specifically placed that burden on the party seeking modification and made such a modification the procedural equivalent of "reopening" a case. *Id.*

*Co.,* 914 P.2d at 415—there is no other evidence on the record contesting the compensability of Rodriguez's injury, given that the City conceded that Rodriguez's injury occurred "in the course of" her employment, and did not otherwise contest liability. The City accordingly failed to meet its burden to modify the GAL under a preponderance standard, and we affirm the court of appeals' holding on the burden of proof issue.

## IV.  Conclusion

¶ 42 We hold that when the cause of an employee's fall is truly unknown, it necessarily arises from a neutral risk. Such an unexplained fall can be compensable as "arising out of" employment per section 8–41–301(1)(c) under the "but-for" test. This test provides that an injury "arises out of" employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed the employee in the position where he or she was injured. Rodriguez's unexplained fall "arose out of" employment under this test; accordingly, we affirm the court of appeals' holding regarding the compensability of her injuries.

¶ 43 We also hold that under section 8–43–201(1) a party seeking to modify an issue determined by a general or final admission, a summary order, or a full order has the burden to prove by a preponderance of the evidence that such a modification should be made. We affirm the court of appeals' holding that the City did not sustain its burden of proof to modify its general admission of liability under this preponderance standard.

JUSTICE EID dissents, and JUSTICE COATS joins in the dissent.

JUSTICE EID, dissenting.

¶ 44 To the majority, an unexplained injury that occurs at work is equivalent to being attacked by car thieves, struck by lightning, or hit by a stray bullet. Maj. op. ¶ 23–24. I disagree. The cause of such "neutral risks" in those cases is perfectly clear—that is, the car thieves, the lightning bolt, or the stray bullets. Such injuries are covered by workers compensation because work put the claimant in the position to be injured by the causal force—that is, the thief, bolt, or bullet. Here, by contrast, the ALJ determined that the cause of Rodriguez's injury was unexplained, and therefore found the injury (correctly in my view) non-compensable. To put it differently, Rodriguez failed to prove that her injury "arose out of" her employment. By deeming such unexplained injuries compensable, the majority significantly expands the scope of workers' compensation coverage in Colorado. Because such decisions are, in my view, better left to the legislature, I respectfully dissent.

¶ 45 As the majority notes, before Rodriguez may recover for her injury under Colorado's Workers' Compensation Act, she must establish by a "preponderance of the evidence" that the injury occurred "in the course of" and "arising out of" her employment. Maj. op. ¶ 16, *citing* §§ 8–41–301(1)(c), 8–43–201(1), C.R.S. (2013). The "arising out of" test requires a claimant to prove "a causal connection between the work conditions and the injury." *In re Question Submitted by the U.S. Court of Appeals for the Tenth Circuit,* 759 P.2d 17, 22 (Colo. 1988); *see also Heinicke v. Indus. Claim Appeals Office,* 197 P.3d 220, 223 (Colo.App. 2008) (noting that a right to workers' compensation benefits does not arise "[w]here causation cannot be established").

¶ 46 In this case, as the majority observes, the ALJ did eliminate some potential causes of Rodriguez's injuries, finding that neither the condition of the stairs nor her preexisting brain aneurysms caused the fall. Maj. op. ¶¶ 9, 20, 22. But eliminating these two potential causes only shows two factors which did not cause the fall, and none that did. Without sufficient evidence to determine why Rodriguez fell, the ALJ ultimately concluded that the cause of the fall was "unexplained." Maj. op. ¶ 9. Because the cause of the fall was unexplained, Rodriguez could not, and did not, establish causation, and thus she did not carry her burden to show by a preponderance of the evidence that her injuries arose out of employment. In my view, we should simply affirm the ALJ's determination in all respects.

¶ 47 The majority nevertheless breathes new life into Rodriguez's claim by placing her

unexplained fall on equal footing with "neutral risks" like car thieves, lightning bolts, or stray bullets. Maj. op. ¶¶ 23–24. These risks are not merely neutral, however; they are also known. If an injury were to arise from any of these causes, the claimant could demonstrate to the ALJ not only how she was injured, but more importantly, that the injury "would not have occurred but for the fact that the conditions and obligations of employment placed the employee in the position" where she was exposed to the risk of being injured. Maj. op. ¶ 2; *see also In re Question*, 759 P.2d at 22–25 (finding that an assault victim's injuries arose out of employment because work obligations caused her to be present at the time and place where she was exposed to the "neutral" threat of the random assault); *Aetna Life Ins. Co. v. Indus. Comm'n*, 81 Colo. 233, 235–36, 254 P. 995, 996 (1927) (affirming an award of compensation for an employee whose employment obligations required him to be at the particular place where he was struck by lightning).

¶ 48 The majority's error, however, is to expand the concept of "neutral risks" to include injuries that occur at work *where the cause is not known*. Such an unexplained injury is not categorically "neutral," as the majority would have it. Rather, an unexplained injury defies categorization. It could have been caused by a neutral risk, but it could also be the result of an entirely personal risk of harm, or of an occupational hazard. In other words, "but for" the claimant's presence at work, the injury could have occurred anyway. Unlike an injury resulting from a known, neutral threat, an unexplained fall by definition does not establish causation, and therefore cannot satisfy the claimant's obligation to demonstrate that an injury arose out of employment.

¶ 49 Significantly, the majority does not question the ALJ's conclusion that the cause of Rodriguez's injury could not be determined, or offer a cause of its own. Yet somehow, the majority finds it "clear" that "Rodriguez's fall was not the result of an occupational hazard, nor a personal risk." Maj. op. ¶ 24. In doing so, the majority extends the ALJ's ruling well beyond its purview. Far from ruling out all occupational hazards or personal risks as potential causes of the injury, the ALJ held only that the fall was not precipitated by Rodriguez's brain aneurysms, or by her tripping or missing a step or by any dangerous condition on the stairs. *Id.*, ¶9. After eliminating these potential causes—and only these potential causes—the ALJ then concluded that the fall was "unexplained." *Id.* Rather than extrapolating from this modest holding the broad conclusion that no occupational hazard or personal risk could have caused the injury, the majority should take the ALJ's determination for what it is: a testament to Rodriguez's failure to establish that her injuries arose out of her employment.

¶ 50 Compounding this error, the majority next implies that the ALJ required Rodriguez to prove the "precise mechanism" of her fall, and thus applied too strict of a causal test. Maj. op. ¶¶ 18, 24. That simply is not the case. The ALJ applied the well-established "preponderance of the evidence" standard. By finding that the cause of the fall was unexplained, however, the ALJ correctly determined that Rodriguez could not meet the burden of proof required to establishing the cause of her injury. Thus, the ALJ's determination was not the result of Rodriguez being required to bear an excessive burden. The burden which the ALJ placed upon Rodriguez was correct; she simply failed to carry that burden.[1]

¶ 51 More significantly, the majority's position extends the ability position to receive worker's compensation well beyond the scope prescribed by statute. The majority denies that its holding suggests "that all injuries that occur at work are compensated under workers' compensation law." Maj. op. ¶ 29. But by placing unexplained injuries on equal

---

**1.** The majority also holds that the City, seeking to modify an issue previously determined by an admission, failed to meet its burden of proving by a preponderance of the evidence that such a modification should be made. Maj. op. ¶¶ 39–41. As the majority observes, however, this holding rests on the conclusion that unexplained falls can be compensable under the "but-for" test. *Id.*, ¶41. As shown above, this premise is incorrect. I would hold instead that where the ALJ concluded that the cause of the fall was unexplained, the City met its burden.

ground with injuries with neutral (and known) causes, the majority makes it possible to receive compensation after merely demonstrating that an injury was sustained on the job. This has never been enough, at least until today, to establish entitlement to workers' compensation—a causal connection must be shown. *See* § 8–41–301(1)(c); *see also In re Question,* 759 P.2d at 22. Otherwise, it would have been unnecessary for the legislature to have included the "arising out of" requirement. *See Fetzer v. N.D. Workforce Safety and Ins.,* 815 N.W.2d 539, 543–44 (N.D.2012) (holding, in a case involving an unexplained fall, that the "but-for reasoning of the positional risk doctrine is inconsistent with our statute that requires claimants to prove a causal connection between their employment and injury"). Thus, by holding that unexplained injuries are compensable, the majority significantly expands the scope of workers' compensation coverage in Colorado. Because I believe this expansion is an issue best left to the legislature, I respectfully dissent from the majority's opinion.

I am authorized to state that Justice COATS joins in this dissent.